**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

─────────────────────────────────────────

WOODSON DAVENPORT,

                                        Plaintiff,

         v.                                              No. 09-CV-875
                                                              (TJM/DRH)

DALE ARTUS, Superintendent, Clinton Correctional
Facility; DEP. TURNER, Deputy Superintendent,
Clinton Correctional Facility; PAT SMITH,
Superintendent, Corcraft Industries at Clinton
Correctional Facility; M. VANN, Assistant Deputy
Superintendent; CAPTAIN BROWN, Clinton
Correctional Facility; and C.O. STICKLE, all
individually and in their official capacities,

                                        Defendants.

─────────────────────────────────────────

**APPEARANCES:**                        **OF COUNSEL:**

WOODSON DAVENPORT
Plaintiff Pro Se
05-A-2714
Adirondack Correctional Facility
Post Office Box 110
Ray Brook, New York 12977

HON. ERIC T. SCHNEIDERMAN            CHRISTOPHER W. HALL, ESQ.
Attorney General for the             Assistant Attorney General
  State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**[1]

         Plaintiff pro se Woodson Davenport ("Davenport"), an inmate in the custody of the New

─────────────────────

         [1]This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

York State Department of Correctional Services ("DOCS"), brings this action against six

DOCS employees alleging violations of the Civil Rights Act, 42 U.S.C. § 1983 and the

Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc et seq.

("RLUIPA").  Am. Compl. (Dkt. No. 41).  Davenport contends that defendants deprived him

of his statutory rights to religious freedom as well as his constitutional rights under the First

and Fourteenth Amendments.  Am. Compl.  Presently pending is defendants' motions for

summary judgment pursuant to Fed. R. Civ. P. 56.  Dkt. No. 33.  Davenport opposes the

motion and has also filed a cross-motion for summary judgment.  Dkt. No. 34.  Also pending

is Davenport's motion to compel.  Dkt. No. 28.  For the following reasons, it is

recommended that the defendants' motion be granted and that Davenport's cross-motion

be denied.  It is further ordered that Davenport's motion to compel is denied..


## I. Background

While incarcerated at Clinton Correctional Facility ("Clinton") in 2007, Davenport was

assigned to the tailor shop and sewed clothes.  Davenport Dep. (Dkt. Nos. 33-4, 33-5) at

18-19.  On May 8, 2007, Clinton Nation of Islam ("NOI") Chaplain Ronald Muhuammad sent

a memo to all housing units informing them that "[t]he Eid-ul-Fitr Festival [("the festival")][2]

w[ould] be held on Tuesday, May 22, 2007 . . . ."  Dkt. No. 33-2 at 6-7; see also Davenport

Dep. at 15; Dkt. No. 41 at 10-11.  The event had previously been approved by defendants

Vann and Brown, as evidenced by their signatures on the memorandum.  Dkt. No. 33-2 at

---

[2]It appears that at the conclusion of Ramadan, followers of NOI break their fast with a festival called Eid-ul-Fitr, or "Festival of Fast-Breaking."  See Skoros v. City of N.Y., 437 F.3d 1, 10 (2d Cir. 2006).

7; Dkt. No. 41 at 11.  Davenport was and is an adherent of the NOI beliefs.  Davenport Aff.

(Dkt. No. 34-3) ¶ 2.

Shortly before the scheduled time of the event, Davenport was informed by defendant

Stickle, a corrections officer, and Jay Lamb that, at the direction of defendants Smith and

Turner, Davenport's work supervisor and the Deputy Superintendent at Clinton respectively,

Davenport could not attend the festival.  Davenport Dep. at 19, 34-35, 58-59; Davenport Aff.

¶ 4.  However, the morning of the event, Davenport showed the memo to a facility sergeant

in the mess hall, and the sergeant gave permission to Davenport and two other NOI

inmates to miss work and attend the festival.  Davenport Dep. at 29-30, 36-38; Davenport

Aff. ¶ 5.  Davenport and the other inmates were sent back to their housing facilities to await

being summoned for the festival.  Davenport Dep. at 30, 38; Davenport Aff. ¶ 5.

Davenport was then told to return to work by a corrections officer.  Davenport Dep. at

30; Davenport Aff. ¶ 6.[3]  When he arrived at the tailor shop, Davenport was told by Stickle

and Lamb that he was again prohibited from attending the festival by order of Smith and

Turner.  Davenport Dep. at 20-22; Davenport Aff. ¶ 7.[4]  Stickle also informed Davenport that

"if [h]e did[ not] perform up to standard, [h]e would be issued a misbehavior report."

Davenport Dep. at 31, 54-55 (explaining that "inmates who did[ not] work up to standard in

_____

[3] Davenport alleges that, after receiving permission from the mess hall sergeant to
attend the festival, Stickle called Turner to advise that Davenport was permitted to miss
work.  Davenport Dep. at 53-54.  However, Stickle states that he did not contact defendant
Turner and that he was given orders by defendant Smith to recall Davenport to work.  Dkt.
No. 28 at 29.

[4] Davenport also contends that a few weeks earlier a group of Christian inmates
were allowed to attend a religious festival and miss work, whereas Davenport and his
fellow NOI members were not allowed to attend their religious festival.  Am. Compl. ¶ 12.

3

the tailor shop could be given a misbehavior report[.]"); see also Davenport Aff. ¶ 8; Vann

Aff. ¶ 25 ("[P]risoners in the Tailor Shop work and worked in 2007 under a quota system

and, therefore, it was important for them to be at work when not otherwise properly excused

in order to meet their individual quotas.").

Later, Chaplain Muhuammad visited the tailor shop and was told by Davenport that

defendants Turner and Smith were refusing to allow him and the two other inmates to leave

work for the festival.  Davenport Dep. at 20; Davenport Aff. ¶ 10; Muhammad Decl. (Dkt.

No. 34-3 at 21-23) at 21-22..  Chaplain Muhuammad then left to speak with various

defendants to see if he could persuade them to change their minds and allow Davenport to

participate in the festival.  Davenport Aff. ¶ 11; Muhuammad Decl. at 22.  Chaplain

Muhuammad was unable to locate defendant Artus, the Clinton Superintendent.  Davenport

Dep. at 17-18; Muhuammad Decl. at 22.  Chaplain Muhuammad spoke with Turner and

was again told that Davenport could not attend the festival.  Davenport Dep. at 22-25;

Davenport Aff. ¶ 12; Muhuammad Decl. at 22.  Turner explained that Davenport was unable

to attend the festival because it was not considered "a religious event."  Davenport Dep. at

24, 61-62; Davenport Aff. ¶ 12; Muhuammad Decl. at 22.  Chaplain Muhuammad asked if

Davenport could receive the feast food for his evening meal, but that request was also

denied.  Davenport Dep. at 24, 62-63; Davenport Aff. ¶ 13; Muhuammad Decl. at 22-23.

Chaplain Muhuammad informed Davenport of the defendants' decision.  Davenport Dep. at

22-23; Muhuammad Decl. at 23.  Davenport returned to work and had no further

conversations with defendants about the festival.  Davenport Dep. at 32.

The festival was listed on the memorandum as "a religious celebration . . . celebrated

directly after the completion of Ramadan."  Davenport Dep. at 39.  There is also another

4

celebration, the Eid-Udhah, which "is celebrated during a time of sacrifice."  Davenport Dep. at 39.  The dates of both holidays change annually.  Davenport Dep. at 39.  Ramadan, and thus the festival, occur once a year.  Davenport Dep. at 40.  Similarly, the Eid-Udhah also occurs once annually.  Davenport Dep. at 40.  DOCS publishes an annual calendar which identifies all of the approved religious holidays for which inmates may be excused from work assignments to participate in their religious celebrations.  Davenport Dep. at 43; Dkt. No. 34-3 at 38, 59-62; Dkt. No. 33-2 at 9-12.  Both holidays were listed on the DOCS calendar.  Dkt. No. 33-2 at 12; Dkt. No. 34-3 at 61.  However, as identified by Chaplain Muhuammad, the festival had already been celebrated at the end of 2006 and was not scheduled to occur again until the Fall of 2007.  Davenport Dep. at 43-44, 66; Dkt. No. 34-3 at 61; Vann Aff. ¶ 10.  Additionally, the Eid-Udhah was also not scheduled to occur until December 20, 2007.  Davenport Dep. at 66; Dkt. No. 34-3 at 61.  Therefore, there were no approved holidays occurring for the NOI in May of 2007.  Vann Aff. (Dkt. No. 33-2) ¶ 5.

Chaplain Muhuammad erred when he wrote in the memorandum that the festival was the Eid Fitr as it was not scheduled until months later.  Davenport Dep. at 68-69.  When defendant Vann, the Clinton Assistant Deputy Superintendent, signed the memorandum approving the requested festival in May, she did not check the religious calendar to verify that the requested festival date was the same as the one on the calendar and relied on two other staff persons to review the memorandum as well as on Chaplain Muhuammad.  Dkt. No. 34-3 at 43-44; Vann Aff. ¶¶ 6-8.  Thus, as the date on the calendar did not correspond to the festival, it was not a DOCS approved religious event and Davenport was not permitted to miss work.  Dkt. No. 34-3 at 38 ("Permission will be given for all observant inmates to take sufficient time off from program assignments to attend . . . holy day

5

observances and services. (See Annual Religious Calendar for specifics.)"); Vann Aff. ¶¶ 13-24.  Davenport was unsure of the official holiday, but because it was organized by the Chaplain and prayers were said, Davenport believed it was a religious event.  Davenport Dep. at 69-72.

Davenport filed a grievance.  Davenport Dep. at 72; Dkt. No. 41 at 12; Davenport Aff. ¶ 14; Dkt. No. 34-3 at 50.  The grievance was denied on the grounds that incomplete and inaccurate paperwork led to "confusion as to what event was actually taking place," and, as the event was not identified as a DOCS religious holiday on the calendar,  Davenport's absence from work was not excused.  Davenport Dep. at 72-73; Dkt. No. 41 at 13-14; Davenport Aff. ¶ 15;[5] Dkt. No. 34-3 at 54-55.  Davenport's appeals were also denied. Davenport Aff. ¶¶ 16-21; Dkt. No. 34-3 at 55-57; Dkt. No. 41 at 14.  This action followed.


## II. Discussion

In his amended complaint, Davenport alleges that his First Amendment rights were violated when defendants prohibited him from attending the festival and precluded him from

---

[5] Davenport contends that defendants' reliance on the fact that the festival was scheduled for a day other than that listed on the DOCS religious calendar is misplaced. Davenport notes that multiple celebrations took place on dates other than those indicated in the calendar such as:

> In 2008 the N.O.I. Eidul-Adha was noted on the religious calendar for December 8, 2008, however it was celebrated on December 17, 2008.  In 2009 the N.O.I. Eid Ul Fitr was noted on the calendar for the date of September 20, 2009 and was celebrated on October 10, 2009.  The N.O.I. Eid Ul-Adha was noted on the religious calendar for the date of November 27, 2009 but was celebrated on December 2, 2009.

Davenport Aff. ¶ 24.

receiving the religious feast that night for his evening meal.  Davenport also asserts a

Fourteenth Amendment violation because he was unable to attend the NOI festival whilst a

Christian inmates were permitted to attend a religious event a few weeks earlier.

Defendants move for summary judgment on the grounds that (1) Artus, Brown, and Stickle

lacked personal involvement in the alleged constitutional violations; (2) the constitutional

claims are meritless; (3) the RLUIPA claims are also meritless; and (4) defendants are

protected by qualified immunity.


## A. Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to

any material fact if supported by affidavits or other suitable evidence and the moving party

is entitled to judgment as a matter of law. The moving party has the burden to show the

absence of disputed material facts by informing the court of portions of pleadings,

depositions, and affidavits which support the motion. Fed. R. Civ. P. 56(c); Celotex Corp. v.

Catrett, 477 U.S. 317, 323 (1986).  Facts are material if they may affect the outcome of the

case as determined by substantive law.  Anderson v. Liberty Lobby, 477 U.S. 242, 248

(1986).  All ambiguities are resolved and all reasonable inferences are drawn in favor of the

non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue

for trial. The non-moving party must do more than merely show that there is some doubt or

speculation as to the true nature of the facts.  Matsushita Elec. Indus. Co. v. Zenith Radio

Corp., 475 U.S. 574, 586 (1986).  It must be apparent that no rational finder of fact could

find in favor of the non-moving party for a court to grant a motion for summary judgment.

Gallo v. Prudential Residential Servs. 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

When, as here, a party seeks dismissal or summary judgment against a pro se litigant, a court must afford the non-movant special solicitude.  See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006); see also Sealed Plaintiff v. Sealed Defendant #1, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds *pro se*, ... a court is obliged to construe his pleadings liberally.'" (citations omitted)).  However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion; the requirement is that there be no genuine issue of material fact.  Anderson, 477 U.S. at 247-48.


## B. Personal Involvement

"'[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'"  Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)).  Thus, supervisory officials may not be held liable merely because they held a position of authority. Id.; Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996).  However, supervisory personnel may be considered "personally involved" if:

> (1) [T]he defendant participated directly in the alleged constitutional violation;
>
> (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong;

8

(3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;

(4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or

(5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986)).

### 1. Artus

The gravamen of Davenport's complaint against defendant Artus, the Superintendent of Clinton, is that Artus failed to exercise proper supervision of DOCS employees who violated Davenport's rights. However, a position in a hierarchical chain of command, without more, is insufficient to support a showing of personal involvement. Wright, 21 F.3d at 501. Additionally, there is no dispute that no one spoke with, or informed, Artus of the memo or the decision to preclude Davenport from attending the festival. Moreover, the amended complaint fails to allege, and Davenport offers no evidence, that Artus failed to train any of the defendants. Davenport contends that Artus' failure to become involved in the process of approving security measures rendered his actions grossly negligent. Davenport Memorandum of Law (Dkt. No. 34-2) at 19. However, it is within the purview of a superior officer to delegate responsibility to others. Such actions do not make Artus personally involved or grossly negligent. See Vega v. Artus, 610 F. Supp. 2d 185, 198 (N.D.N.Y. 2009) (finding no personal involvement where "the only involvement of the supervisory official is to

refer the inmate's complaint to the appropriate staff for investigation.") (citing Ortiz-Rodriquez v. N.Y. State Dep't of Corr. Servs., 491 F Supp.2d 342, 347 (W.D.N.Y. 2007)).

Additionally, Davenport fails to allege or prove that there was a continuing pattern of constitutional violations to which he was subjected.  See Harnett v. Barr, 538 F. Supp. 2d 511, 524 (N.D.N.Y. 2008) ("If the official is confronted with a violation that has already occurred and is not ongoing, then the official will not be found personally responsible for failing to 'remedy' a violation.").

Accordingly, defendants' motion should be granted on this ground as to Artus.


### 2. Brown

Defendant Brown, Security Captain at Clinton, was a signatory on the May 8, 2007 memorandum approving the festival.  Thus Brown arguably participated in the review of the memorandum which Davenport alleges established the May 22nd celebration as a religious event.  As this was the only action Brown took, it is this action upon which Davenport relies to establish personal involvement.  However, Davenport alleges that the statutory and constitutional violations occurred with the subsequent decisions to prevent him from attending the previously approved festival.  There is nothing in the record to indicate that Brown had any part in the decision to deny Davenport's participation in the festival and compel his continued attendance at work.  See McClary v. Coughlin, 87 F. Supp. 2d 205, 215 (W.D.N.Y. 2000) ("Personal involvement does not hinge on who has the ultimate authority for constitutionally offensive decisions.  Rather, the proper focus is the defendant's direct participation in, and connection to, the constitutional deprivation.")  Thus, there has been offered no evidence that Brown was directly involved in the alleged deprivations.

Moreover, the amended complaint fails to allege, and Davenport offers no evidence, that Brown failed to train any of the defendants.  Lastly, for the same reasons as cited above, Davenport has failed to establish that Brown was grossly negligent or aware, and indifferent to an ongoing constitutional violation.

Accordingly, defendants' motion should be granted on this ground as to Brown.


### 3. Sickle

Defendant Sickle personally informed Davenport that Davenport was not permitted to attend the festival on May 22.  There appears no dispute that Turner and Smith made the ultimate decision not to allow Davenport to attend the festival, a decision in which Sickle had no part.  There is nothing in the record to indicate what power Sickle possessed which would account for direct involvement in the alleged constitutional violation that Davenport was ultimately prohibited from attending the festival.  See Ashcroft v. Iqbal, 129 S.Ct. 1937, 1948 (2009) ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").  Here, viewing the evidence in the light most favorable to Davenport, the record demonstrates at most that Sickle acted solely as the messenger and lacked the authority to make or implement any decision which allegedly caused Davenport's constitutional deprivations.  Thus, there is nothing to indicate that Sickle was personally involved in the alleged constitutional and statutory violations.

Accordingly, defendants' motion should be granted on this ground as to Sickle.

11

**C. First Amendment**

Davenport alleges that his First Amendment rights were violated when the defendants precluded him from attending the religious festival and prohibited him from receiving the religious feast for his evening meal.  Defendants contend that Davenport's claims are unsupported and insufficient.

The First Amendment protects the right to free exercise of religion.  See generally Cutter v. Wilkinson, 544 U.S. 709, 719 (2005).  "Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause."  Ford v. McGinnis, 352 F.3d 582, 588 (2d Cir. 2003) (citing Pell v. Procunier, 417 U.S. 817, 822 (1974)).   This right is not absolute and can be limited due to the inmate's "incarceration and from valid penological objectives – including deterrence of crime, rehabilitation of prisoners, and institutional security."  O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) (citations omitted); see also Benjamin v. Coughlin, 905 F.2d 571, 574 (2d Cir. 1990) ("The governing standard is one of reasonableness, taking into account whether the particular regulation . . . is reasonably related to legitimate penological interests.") (citations omitted).

> The Turner Court determined that the four factors to be considered are considered:
> 1) whether there is a rational relationship between the regulation and the legitimate government interests asserted; 2) whether the inmates have alternative means to exercise the right; 3) the impact that accommodation of the right will have on the prison system; and 4) whether ready alternatives exist which accommodate the right and satisfy the governmental interest.

Benjamin, 905 F.2d at 574 (citing Turner v. Safely, 483 U.S. 78, 89-91 (1987).

### 1. Attendance at the Festival

""[P]risoners have a constitutional right to participate in congregate religious services."
Salahuddin v. Coughlin, 993 F.2d 306, 308 (2d Cir. 1993).  While the Second Circuit has
accorded prison officials great deference in the administration and "responsibility of
maintaining order in prisons, . . . prisoners should be afforded every reasonable opportunity
to attend religious services, whenever possible." Young v. Coughlin, 866 F.2d 567, 570 (2d
Cir. 1989) (citations omitted).   "The governing standard is one of reasonableness, taking
into account whether the particular regulation affecting some constitutional right asserted by
a prisoner is reasonably related to legitimate penological interests." Benjamin v. Coughlin,
905 F.2d 571, 574 (2d Cir. 1990) (citations omitted).  The same analysis is undertaken
when there is an allegation that "an individual dec[ided] to deny a prisoner the ability to
engage in some requested religious practice."  Ford, 352 F.3d at 595 n.15 (citations
omitted).

In this case, Davenport has failed to allege or prove that he was denied access to a
recognized religious service.  It is undisputed that both Chaplain Muhuammad, Vann, and
Vann's subordinates made a mistake in scheduling the festival.  Davenport Dep. at 68-69;
Vann Aff. ¶¶ 5-8.  The festival was identified as the Eid-ul-Fitr, which was scheduled to
occur months later.  Davenport Dep. at 43-44, 66; Vann Aff. ¶ 10.  Additionally, another
religious holiday identified as an "Eid", to which the memorandum could have referred was
not scheduled to occur for months.  Davenport Dep. at 66.  There was no DOCS-approved
holiday scheduled for May 22, 2007, and when asked which holiday fell on that date,
Davenport was unable to indicate a specific religious event.  Davenport Dep. at 69-72.
Instead, Davenport relied on conclusory generalizations to attempt to validate the festival's

13

proffered status as a recognized and approved religious event. Id.  As this was not a

recognized religious service, Davenport had no right to participate in it and, therefore, no

First Amendment violation occurred.

Moreover, even if Davenport's religious beliefs were infringed by prohibiting his

attendance at the festival, there was a reasonable and legitimate reason for doing so.

DOCS has established a policy allowing inmates to be excused from work for recognized

religious events based upon the demands and requirements of the inmate's employment.

Dkt. No. 34-3 at 38; Vann Aff. ¶¶ 13-24.  This policy was well known by Davenport.

Davenport Dep. at 54-55; Vann Aff. ¶ 25.  This system was reasonably implemented, as

was the policy regarding absences from work assignments.  Thus, as these requirements

were reasonable, there was no First Amendment violation.

Furthermore, the regulation comports with the factors identified in Turner.  The

requirement that inmates report to their work assignments and perform their designated

tasks unless excused for a recognized religious event is reasonable.  Prison administrators

have a duty to ensure that facilities are run in an organized fashion, inmates' whereabouts

are continually known, and inmates are observing facility rules.  This policy still allows

inmates to exercise their religious rights and attend events which have been identified by

both their religious leaders and DOCS.  Thus, inmates still retain the right to observe

recognized holidays which appear on the religious calendar.  The alternative, of allowing

inmates to be continually absent from their work assignments for any type of observance,

would constitute an undue burden on the prison administration interfering with the ability of

administrators to account for the location and productivity of individual inmates.  Therefore,

the DOCS policy requiring attendance of work unless an approved religious event is

occurring is consistent with the aims of <u>Turner</u>.

Accordingly, defendants motion on this ground should be granted.

### 2. Failure to Provide Festival Feast for Dinner

The Second Circuit has held "that prison authorities must accommodate the right of prisoners to receive diets consistent with their religious scruples." <u>Kahane v. Carlson</u>, 527 F.2d 492, 495 (2d Cir. 1975). Therefore, to "deny prison inmates the provision of food that satisfies the dictates of their faith . . . unconstitutionally burden[s] their free exercise rights." <u>McEachin v. McGuinnis</u>, 357 F.3d 197, 203 (2d Cir. 2004). "Courts, however, are reluctant to grant dietary requests where the cost is prohibitive, or the accommodation is administratively unfeasible." <u>Benjamin</u>, 905 F.2d at 579.

In this case, Davenport contends that defendants' failure to provide him with the festival feast as his evening meal constituted a First Amendment violation. Defendants have failed to address this claim. Thus, they have failed to articulate the first <u>Turner</u> standard as to the legitimate penological interest which is rationally related to their refusal to provide the evening meal. This makes summary judgment inappropriate. <u>See</u> <u>Francis v. Keane</u>, 888 F. Supp. 568, 577 (S.D.N.Y. 1955) (denying summary judgement where "grave questions remain with respect to the nexus, if any, between applying the directive to the plaintiffs and defendants' asserted penological interests . . . . ") (citing cases).

However, even viewing the facts in the light most favorable to Davenport, the deprivation of one festival meal was *de minimis*, and not actionable. While not specified in the <u>Turner</u> factors, Second Circuit case law regarding inmate free exercise claims incorporates a "threshold [showing] that the disputed conduct substantially burdens his sincerely religious

beliefs." <u>Salahuddin</u>, 467 F.3d at 274-75 (citing <u>Ford</u>, 352 F.3d at 591).  While defendants'

have failed in their "relatively limited burden or identifying the legitimate penological

interests that justify the impinging conduct," such a failure is not fatal to their motion

because Davenport has failed to allege or prove more than an inconsequential burden on

his religious rights.  <u>Salahuddin</u>, 467 F.3d at 275 (citations omitted).

First, the meal in question was not part of a recognized religious service.  Thus, the meal

does not have singular importance as those recognized to constitute a First Amendment

deprivation.  <u>See Ford v. McGinnis</u>, 352 F.3d 582, 594 n.12 (2d Cir. 2003) (holding that a

meal associated with a large religious feast "is unique in its importance within [the religion]

to distinguish the present case from those in which the mere inability to provide a small

number of meals commensurate with a prisoner's religious dietary restrictions was found to

be a *de minimis* burden) (citations omitted).  Instead, this celebration meal is comparable to

any other dinner which Davenport was scheduled to receive.  <u>Id.</u>  Davenport does not

contend that he was denied appropriate religious meals during his incarceration at Clinton.

Instead, he alleges that he did not receive festival food on this particular date for his

evening meal.  This claim fails to allege that he was not provided with appropriate religious

meals, but only that he did not receive the religious meal that he desired.  Thus, the failure

to provide food from the festival for his evening meal caused a disagreement between

Davenport and staff about his choice of religious menus but not the deprivation of a meal

which comports with his religious beliefs.  Accordingly, this incident did not impose any

cognizable burden on the free exercise of  Davenport's religious rights.

Second, even if denial of festival food constituted a cognizable burden, it was a *de*

*minimus* one.  <u>See</u> <u>McEachin</u>, 357 F.3d at203 n.6 (holding that, "[t]here may be

16

inconveniences so trivial that they are most properly ignored . . . [thus] the time-honored maxim *de minimis non curat lex*[6] applies."); see also Rapier v. Harris, 172 F.3d 999, 1006 n.6 (7th Cir. 1999) ("De minimis burdens on the free exercise of religion are not of constitutional dimension.").  Missing one requested meal does not constitute a First Amendment violation.  See Rapier v. Harris, 172 F.3d 999, 1006 n.4 (7th Cir. 1999) (affirming summary judgment because "the unavailability of a non-pork tray . . . at three meals out of 810 does not constitute more than a de minimis burden . . . [as there] has [been] no[] alleg[ation of] a routine or blanket practice of denying him pork-free meals."). Accordingly, viewing the evidence in the light most favorable to Davenport, he has still alleged and proven only a *de minimus* burden on his religious exercise which is insufficient to state a First Amendment claim.

Thus, defendants' motion on this ground should be granted.


### D. RLUIPA Claim

The RLUIPA provides that

[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1.  In a RLUIPA claim, "[t]he prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs.  The defendants then bear the relatively limited burden of identifying the legitimate penological

---

[6]This phrase translates as "the law does not concern itself with trifles." Gottlieb Dev. LLC v. Paramount Pictures Corp., 590 F. Supp. 2d 625, 632 (S.D.N.Y. 2008).

interests that justify the impinging conduct." Salahuddin, 467 F.3d at 274-75.

As discussed above, even construing the facts in the light most favorable to Davenport, he has failed to establish that defendants' conduct infinged his religious beliefs and practices.  Moreover, because "when reviewing a claim under RLUIPA, a court must afford due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources," Davenport's claim should be denied for the alternative reasons also discussed above.  Hamilton v. Smith, No. 06-CV-805, 2009 WL 3199520, at *7 (N.D.N.Y. Sept. 30, 2009) (internal quotation marks and citations omitted).

Accordingly, defendants' motion on this ground should be granted.


### E. Fourteenth Amendment

The Fourteenth Amendment's Equal Protection Clause mandates equal treatment under the law.  Essential to that protection is the guarantee that similarly situated persons be treated equally.  City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985); Phillips v. Girdich, 408 F.3d 124, 129 (2d Cir. 2005) ("To prove a violation of the Equal Protection Clause . . . a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination.").

> [T]he Equal Protection Clause bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.

18

<u>Vegas</u>, 610 F. Supp. 2d at 209 (internal quotation marks and citations omitted).  However, "[t]he Supreme Court has specifically held that in the prison context, the Equal Protection clause does not require that every religious sect or group within a prison . . . have identical facilities or personnel."  <u>Pugh v. Goord</u>, 571 F. Supp. 2d. 477, 502 (S.D.N.Y. 2008) (internal quotation marks and citations omitted). Thus "even if [Davenport] can demonstrate that two groups are similarly situated, disparate treatment may still be warranted if the government can demonstrate that the distinctions are reasonably related to legitimate penological interests." <u>Id</u>. (internal quotation marks and citations omitted).

In this case, Davenport contends that he and two other NOI inmates were prohibited from attending a festival while a group of unnamed, unidentified, and unconfirmed Christian inmates were permitted to attend an unidentified religious service and miss work a few weeks prior to the date in question.  This is insufficient to establish an equal protection violation.  First, Davenport and the other NOI inmates were not the subjects of intentional discrimination.  As previously discussed, they were precluded from attending an unrecognized religious festival for legitimate penological reasons which had nothing to do with Davenport's religious affiliation.  Second, Davenport has failed to allege or prove that the Christian inmates were similarly situated in that they were allowed to miss work and attend an unrecognized religious event.   Accordingly, Davenport has failed to show that any other inmates participating in religious observances, who were similarly situated, received different treatment.  Accordingly, Davenport has failed to establish the necessary elements of an Equal Protection claim.

Defendants' motion as to this claim should be granted.

**F. Qualified Immunity**

Finally, defendants claim that even if Davenport's constitutional claims are substantiated, they are entitled to qualified immunity.  Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken, 236 F. Supp. 2d at 229-30. However, even if the constitutional privileges "are so clearly defined that a reasonable public official would know that his actions might violate those rights, qualified or good faith immunity might still be available as a bar to a plaintiff's suit if it was objectively reasonable for the public official to believe that his acts did not violate those rights."  Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990) (internal citations omitted)).

A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights of which a reasonable person would have known were clearly established at the time of the alleged violation. Aiken, 236 F. Supp. 2d at 230.  Here, the second prong of the inquiry need not be reached because, for the reasons discussed above, Davenport has failed to raise a question of fact as to the first prong of the inquiry.

Accordingly, in the alternative, defendants' motion on this ground should be granted.[7]

---

[7]For the reasons discussed above in considering defendants' motion, Davenport's cross-motion for summary judgment should be denied in its entirety.

### III. Motion to Compel

Davenport filed a motion pursuant to Fed. R. Civ. P. 37 to compel defendants to provide

answers to certain interrogatories and produce certain documents.  Dkt. No. 28.  That

motion was served before defendants filed their motion for summary judgment.  Dkt. No. 33.

At the outset of the case, this Court filed a "Mandatory Pretrial Discovery and Scheduling

Order in Civil Rights Actions Brought by Inmates Pro Se." a standardized order filed in this

district in all such cases.  Dkt. No. 16.  It requires both the plaintiff and the defendants to

serve an opposing party with certain discovery materials without the necessity of a

discovery request.  Id.  Its stated purpose is "[t]o expedite the fair disposition of this action

and to discourage wasteful pretrial activities . . . ."  Id. at 1.  The order requires defendants'

counsel to file a notice or copy of a cover letter certifying that defendants have complied

with the order.  Id. at 3-4 & n.3.  Defendants here filed that certification.  Dkt. No. 20.  The

order does not preclude a plaintiff or defendant from seeking additional discovery from an

opposing party, but, given the order and its purpose, such additional discovery must not be

cumulative, overbroad, or unduly burdensome, and must satisfy the requirements of

relevance under Fed. R. Civ. P. 26.

Defendants now having filed a motion for summary judgment after complying with the

order and this Court now having found that the motion should be granted as to all claims

and all defendants, the threshold issue on Davenport's motion to compel is whether the

additional interrogatory responses and documents sought could reasonably alter the

outcome of defendants' motion.  Reviewing the interrogatories and document demands in

the light most favorable to Davenport, they would not.  Both seek additional information as

to the individuals involved and which individuals performed which acts.  They also seek

21

additional information on the equal protection claim as to other groups who received more favorable treatment than did the NOI followers.

As to which individuals performed which acts, the information sought is irrelevant. Davenport's claims and proof were evaluated here in the light most favorable to Davenport, including drawing all inferences which the evidence would support in his favor.  Even under this highly favorable standard of review, Davenport has been unable to establish the violations alleged in the amended complaint because, as alleged, they fail to rise to the level of cognizable deprivations.  Additional information as to who took what actions will have no impact on this conclusion where the undisputed events alleged by Davenport fail to constitute sufficient claims.

As to other groups, Davenport's demands are overbroad, unduly burdensome, and irrelevant.  Davenport is not entitle to a fishing expedition through Clinton or DOCS files for the records of other religious groups and their religious observances.  As to NOI religious observances, the evidence sought both fails to establish any material fact at issue and, because the impact of the events alleged by Davenport on his right to exercise his religious beliefs was *de minimis*, the information sought, no matter its content, would not affect the outcome of defendants' motion.

Accordingly, Davenport's motion to compel is denied.


### IV.  Conclusion

For the reasons stated above, it is hereby

    1. **RECOMMENDED** that:

        A. Defendants' motion for summary judgment (Dkt. No. 33) be **GRANTED** and

judgment be entered for all defendants on all claims;  and

     B. Davenport's cross-motion for summary judgment (Dkt. No. 34) be **DENIED** in

        its entirety; and

  2. **ORDERED** that Davenport's motion to compel (Dkt. No. 28) be **DENIED** in its

     entirety.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the

foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO**

**OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE**

**REVIEW.**  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892

F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


Dated:  January 10, 2011
       Albany, New York

                               United States Magistrate Judge